1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
8                                      AT TACOMA

9    JULI A. WOEPPEL,

10                        Plaintiff,                      CASE NO. 12-cv-06001 RBL

11          v.                                            REPORT AND
                                                          RECOMMENDATION ON
12   CAROLYN W. COLVIN, Acting                            PLAINTIFF'S COMPLAINT
     Commissioner of the Social Security
13   Administration,                                      Noting Date: February 28, 2014

14                        Defendant.

15

16          This matter has been referred to United States Magistrate Judge J. Richard Creatura

     pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as
17
     authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976).  This
18
     matter has been fully briefed (*see* ECF Nos. 15, 16, 17).
19
            After considering and reviewing the record, the Court finds that the Administrative
20
     Law Judge erred in his evaluation of the opinion evidence from plaintiff's treating orthopedic
21
     surgeon, the state agency medical consultant, and an examining nurse practitioner.  These
22
     errors were harmful, and therefore the Commissioner's decision should be reversed and
23
     remanded for further proceedings.
24

## BACKGROUND

Plaintiff, JULI A. WOEPPEL, was born in 1956 and was 52 years old on the alleged date of disability onset of January 1, 2009 (*see* Tr. 183-93).  Plaintiff received her GED in 1981.  Plaintiff has worked in a nursery, cloning and reproducing plants, as a customer service representative for a cable company, and some data entry (Tr. 36-37, 61).

Plaintiff has at least the severe impairments of "degenerative disk disease and degenerative joint disease of the cervical spine and the lumbar spine, status-post cervical fusion, and left ulnar neuropathy status-post surgery (20 CFR 404.1520(c) and 416.920(c))" (Tr. 16).

At the time of the hearing, plaintiff was living with her daughter (Tr. 37-38).

## PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act on December 18, 2009 (*see* Tr. 183-93).  The applications were denied initially and following reconsideration (Tr. 78-81, 88-105).  Plaintiff's requested hearing was held before Administrative Law Judge Verrell Dethloff ("the ALJ") on August 10, 2011 (*see* Tr. 32-73).  On September 1, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.13-27).

On September 21, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 2-4).  *See* 20 C.F.R. § 404.981.  Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in November 2012 (*see* ECF Nos. 1, 3).  Defendant

1    filed the sealed administrative record regarding this matter ("Tr.") on March 19, 2013 (*see*

2    ECF Nos. 10, 11).

3          In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not

4    the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ properly

5    evaluated plaintiff's testimony; (3) Whether or not the ALJ properly assessed plaintiff's

6    residual functional capacity ("RFC"); and (4) Whether or not the ALJ erred by basing his

7    step four and alternative step five findings on a RFC assessment that did not include all of

8    plaintiff's limitations (*see* ECF No. 15, p. 1).

9                                    STANDARD OF REVIEW

10         Plaintiff bears the burden of proving disability within the meaning of the Social

11   Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the

12   fifth and final step of the sequential disability evaluation process.  *See Bowen v. Yuckert*, 482

13   U.S. 137, 140, 146 n. 5 (1987).  The Act defines disability as the "inability to engage in any

14   substantial gainful activity" due to a physical or mental impairment "which can be expected

15   to result in death or which has lasted, or can be expected to last for a continuous period of not

16   less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is

17   disabled pursuant to the Act only if the claimant's impairment(s) are of such severity that the

18   claimant is unable to do previous work, and cannot, considering the claimant's age,

19   education, and work experience, engage in any other substantial gainful activity existing in

20   the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*,

21   180 F.3d 1094, 1098 (9th Cir. 1999).

22         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

23

24   social security benefits if the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).  "Substantial

evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.'"  *Magallanes v.*

*Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26

(9th Cir. 1989)).  Regarding the question of whether or not substantial evidence supports the

findings by the ALJ, the Court should "review the administrative record as a whole,

weighing both the evidence that supports and that which detracts from the ALJ's

conclusion.'"  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes,*

*supra*, 881 F.2d at 750).

       In addition, the Court must independently determine whether or not "'the

Commissioner's decision is (1) free of legal error and (2) is supported by substantial

evidence.'"  *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v.*

*Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases));

*Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530,

532 (9th Cir. 1985)).  According to the Ninth Circuit, "[l]ong-standing principles of

administrative law require us to review the ALJ's decision based on the reasoning and actual

findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the

adjudicator may have been thinking."  *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th

Cir. 2009) (*citing SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (other citation omitted));

*see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an

agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp,*

*supra*, 332 U.S. at 196).  In the context of social security appeals, legal errors committed by

1   the ALJ may be considered harmless where the error is irrelevant to the ultimate disability

2   conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122;

3   *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

4

5                                                DISCUSSION

6   **1.   Whether or not the ALJ properly evaluated the medical evidence.**

7            Plaintiff has challenged the ALJ's review of the medical evidence.  Specifically,

8   plaintiff contends the ALJ erroneously evaluated the opinions of treating orthopedic surgeon

9   Christopher Kain, M.D., examining medical source Mike Myers, P.A.C., and state agency

10  consultant Robert Hoskins, M.D.  Plaintiff also asserts that the ALJ erred by failing to

11  discuss medical evidence that predated the alleged onset date.

12           The ALJ must provide "clear and convincing" reasons for rejecting the

13  uncontradicted opinion of either a treating or examining physician or psychologist.  *Lester v.*

14  *Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th

15  Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)).  Even if a treating or

16  examining physician's opinion is contradicted, that opinion can be rejected only "for specific

17  and legitimate reasons that are supported by substantial evidence in the record."  *Lester,*

18  *supra*, 81 F.3d at 830-31 (*citing Andrews, supra*, 53 F.3d at 1043; *Murray v. Heckler*, 722

19  F.2d 499, 502 (9th Cir. 1983)).  The ALJ can accomplish this by "setting out a detailed and

20  thorough summary of the facts and conflicting clinical evidence, stating his interpretation

21  thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing*

22  *Magallanes, supra*, 881 F.2d at 751).

23

24

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey, supra*, 849 F.2d at 421-22).  But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))).  The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513(a), there are "other sources," such as nurse practitioners, therapists and chiropractors, who are considered other medical sources[1], *see* 20 C.F.R. § 404.1513 (d).  *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling ("SSR") 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939.  An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*,

---

[1] "Other sources" specifically delineated in the relevant federal regulations also include "educational personnel," *see* 20 C.F.R. § 404.1513(d)(2), and public and private "social welfare agency personnel," *see* 20 C.F.R. § 404.1513(d)(3).

12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e)).

The Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." *Bruce, supra*, 557 F.3d at 1116 (*citing Smolen, supra*, 80 F.3d at 1289). Similar to the rationale that an ALJ may not discredit a plaintiff's testimony as not supported by objective medical evidence once evidence demonstrating an impairment has been provided, but may discredit a plaintiff's testimony when it contradicts evidence in the medical record, *see Smolen*, *supra,* 80 F.3d at 1284, an ALJ may discredit lay testimony if it conflicts with medical evidence, even though it cannot be rejected as unsupported by the medical evidence, *see Lewis, supra*, 236 F.3d at 511 (an ALJ may discount lay testimony that "conflicts with medical evidence") (*citing Vincent, supra*, 739 F.2d at 1395; *Baylis, supra*, 427 F.3d at 1218 ("[i]nconsistency with medical evidence" is a germane reason for discrediting lay testimony) (*citing Lewis, supra*, 236 F.3d at 511); *see also Wobbe v. Colvin*, 2013 U.S. Dist. LEXIS 111325 at *21 n.4 (D. Or. 2013) (unpublished opinion) ("*Bruce* stands for the proposition that an ALJ cannot discount lay testimony regarding a claimant's symptoms solely because it is *unsupported* by the medical evidence in the record; it does *not* hold *inconsistency* with the medical evidence is not a germane reason to reject lay testimony.") (*citing Bruce, supra*, 557 F.3d at 1116), *adopted by Wobbe v. Colvin*, 2013 U.S. Dist. LEXIS 110195 at *2 (D. Or. 2013) (unpublished opinion).

However, "only 'acceptable medical sources' can [provide] medical opinions [and] only 'acceptable medical sources' can be considered treating sources. *See* SSR 06-03p, 2006 SSR LEXIS 5 at *3-*4 (internal citations omitted). Nevertheless, evidence from "other

medical" sources, that is, lay evidence, can demonstrate "the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* at *4. The Social Security Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." *Id.* at *8. Therefore, according to the Social Security Administration, opinions from other medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." *Id.*

Relevant factors when determining the weight to be given to an other medical source include:

> How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source present relevant evidence to support an opinion; How well the source explains the opinion; Whether [or not] the source has a specialty or area of expertise related to the individuals' impairments(s), and Any other factors that tend to support or refute the opinion.

2006 SSR LEXIS 5 at *11. In addition, the fact "that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . . 'acceptable medical sources' 'are the most qualified health care professionals.'" *Id.* at *12. However, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medial source who is not an 'acceptable

1  medical source' may outweigh the opinion of an 'acceptable medical source,' including the

2  medical opinion of a treating source." *Id.* at \*12-\*13.

3      **a.   Christopher Kain, M.D., treating orthopedic surgeon**

4      Dr. Kain treated plaintiff for ulnar neuritis of her left upper extremity (*see* Tr. 320).

5  On January 26, 2009, he performed a subcutaneous ulnar nerve transfer, left (Tr. 319).  A

6  June 2, 2009 treatment note indicates that plaintiff had dysesthesias with snapping of her

7  ulnar nerve but full interosseous strength and full range of motion of the elbow, wrist, and

8  fingers (Tr. 317).  Also on June 2, 2009, Dr. Kain completed a physical evaluation form for

9  DSHS, on which he noted decreased sensation in the left hand and a positive Tinel's sign at

10  the elbow (Tr. 328).  He opined that plaintiff was moderately limited in her ability to lift and

11  handle; that she had restricted mobility, agility, or flexibility with pulling, pushing, and

12  reaching; that she could not put pressure on her left elbow; and that she should be limited to

13  light to sedentary work (Tr. 329).

14      The ALJ gave weight to Dr. Kain's opinion to the extent it was consistent with the

15  RFC (Tr. 22).  The ALJ agreed with Dr. Kain that plaintiff is capable of light work with

16  some limitations in her left upper extremity, but specifically found "that she can occasionally

17  reach overhead, feel, or push or pull with her left upper extremity, and that she can

18  manipulate with the fingers of her left hand" (*id.*).

19

20      Plaintiff claims two errors with respect to the ALJ's treatment of Dr. Kain's opinion.

21  First, she contends that the ALJ failed to note Dr. Kain's restriction that she not place

22  pressure on her left elbow.  Plaintiff is correct; the ALJ wholly omitted this restriction from

23  his summary of Dr. Kain's opinion or subsequent discussion of the doctor's findings.  This

24  was error.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The ALJ must

1   consider all medical opinion evidence.  20 C.F.R. § 404.1527(b)."); SSR 96-8p ("If the RFC

2   assessment conflicts with an opinion from a medical source, the adjudicator must explain

3   why the opinion was not adopted.").

4          The Commissioner nevertheless contends that the ALJ was not required to discuss Dr.

5   Kain's opinion that plaintiff could not put pressure on her elbow because this was not

6   significant probative evidence.  To the contrary, Dr. Kain's opinion related to her functional

7   limitations and therefore the ALJ was required to discuss it because it directly affects

8   plaintiff's RFC.  The Commissioner also argues that the ALJ properly declined to adopt all

9   of Dr. Kain's manipulative limitations because the ALJ cited the June 2, 2009 treatment note

10  in which plaintiff had full range of motion and intact strength in her left elbow, wrist, and

11  fingers.  Nevertheless, this observation does not account for the ALJ's failure to offer any

12  reason to reject Dr. Kain's opinion that plaintiff could not put pressure on her elbow.

13  Presumably, plaintiff could still have full range of motion and intact strength and still not be

14  able to put pressure on her elbow.  *See*, *e.g.*, *Bray*, *supra*, 554 F.3d at 1225-26.  Finally, the

15  Commissioner contends that plaintiff failed to show how her inability to put pressure on her

16  left elbow is inconsistent with the RFC.  The Court disagrees.  Dr. Kain's opinion that

17  plaintiff cannot put pressure on her elbow is an additional functional limitation that is not

18  accounted for in the RFC, and therein lies the inconsistency.

19          Plaintiff also contends that because Dr. Kain found she had decreased sensation in her

20  left hand and a positive Tinel's sign in her left elbow, the ALJ's finding that plaintiff can

21  manipulate with her left fingers is erroneous.  The ALJ's finding that plaintiff can manipulate

22  with her left fingers is contrary to Dr. Kain's opinion that plaintiff has moderate limitations

23  in her ability to handle.  The ALJ, however, failed to provide any specific or legitimate

24

1    reason to discount Dr. Kain's opinion.  *See Reddick, supra*, 157 F.3d at 725 (ALJ must

2    explain why his own interpretations, rather than those of the doctors, are correct).  At most,

3    the ALJ implied Dr. Kain's opinion that plaintiff had handling restrictions was inconsistent

4    with his own findings that plaintiff had full strength and range of motion in her elbow, wrist,

5    and fingers.  Yet even if this were the ALJ's reasoning, this finding would be insufficient to

6    reject the doctor's opinion, which is independently supported by his findings that plaintiff

7    had decreased sensation in her left hand and a positive Tinel's sign in her left elbow.  .

8         Because the ALJ erroneously evaluated Dr. Kain's opinion, the Court must determine

9    whether these errors were harmless.  The Ninth Circuit has "recognized that harmless error

10   principles apply in the Social Security Act context."  *Molina, supra*, 674 F.3d at 1115 (*citing

11   Stout, supra*, 454 F.3d at 1054 (collecting cases)).  The Court noted multiple instances of the

12   application of these principles.  *Id*. (collecting cases).  The Court noted that "several of our

13   cases have held that an ALJ's error was harmless where the ALJ provided one or more

14   invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that

15   were supported by the record."  *Id.* (citations omitted). The Ninth Circuit noted that "in each

16   case we look at the record as a whole to determine [if] the error alters the outcome of the

17   case."  *Id.*  The court also noted that the Ninth Circuit has "adhered to the general principle

18   that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability

19   determination.'"  *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162

20   (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that

21   courts must review cases "'without regard to errors' that do not affect the parties' 'substantial

22   rights.'"  *Id.* at 1118 (*quoting Shinsheki, supra*, 556 U.S. at 407 (*quoting* 28 U.S.C. § 2111)

23   (codification of the harmless error rule)).

24

1    Here, the ALJ did not incorporate into the RFC Dr. Kain's opinions that plaintiff had

2    moderate limitations in her ability to handle and should not put pressure on her left elbow.

3    Full adoption of Dr. Kain's opinions would lead to a different RFC, which could result in a

4    different disability determination.  As such, the failure to fully credit Dr. Kain's opinions is

5    not harmless error and this matter should be evaluated further.

6        **b.  Mike Myers, P.A.C., examining source**

7        On January 7, 2010, Mr. Myers completed a physical evaluation form for DSHS on

8    which he noted plaintiff had decreased range of motion in her neck and back and had pain

9    with range of motion in her left elbow, neck, and lower back (Tr. 335).  He also noted MRI

10   findings indicating degenerative disk disease (*id.*).  He opined that plaintiff had moderate

11   limitations in her ability to lift, handle, and carry, and that she should be limited to

12   performing sedentary work (Tr. 336).  D. Frederick, M.D., co-signed the report (Tr. 337).

13       The ALJ gave no weight to Mr. Myers's opinion because: (1) the opinion was not

14   from a medically acceptable source; (2) the examination findings were "inconsistent with

15   examinations made before and after this date, during which the claimant demonstrated a full

16   range of motion in her upper left extremity," and (3) plaintiff did not seek ongoing treatment

17   for neck and back impairments (Tr. 23).

18       Plaintiff contends that the ALJ erroneously found Mr. Myers was not a medically

19   acceptable source because Dr. Frederick co-signed the report.  The Ninth Circuit has held

20   that to the extent an "other" medical source "was working closely with, and under the

21   supervision of [a physician], [his] opinion is to be considered that of 'an acceptable medical

22   source.'" *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing

23   *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)); *see also Molina, supra*, 674 F.3d at

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 12

1    1111 (affirming the ALJ's decision not to consider the opinion of a physician's assistant as

2    an acceptable medical source because "the record [did] not show that she worked under a

3    physician's close supervision"); *Mac v. Astrue*, 918 F. Supp. 2d 975, 982-83 (N.D. Cal.

4    2013) (collecting cases analyzing this issue).  Here, other than Dr. Frederick's signature on

5    Mr. Myers's report nearly two weeks after the examination date, there is no evidence in the

6    record that Mr. Myers worked under Dr. Frederick's close supervision.  As such, the ALJ did

7    not err by treating Mr. Myers as an "other" medical source.  Nevertheless, the ALJ did not

8    provide a germane reason to discount Mr. Myers's opinion by simply noting that Mr. Myers

9    was not an acceptable medical source.

10           Plaintiff argues that the ALJ's second reason is erroneous because there was no

11   inconsistency between Mr. Myers's findings and other findings by a medical doctor cited by

12   the ALJ.  Plaintiff is correct.  The ALJ incorrectly found that Mr. Myers noted decreased

13   range of motion in plaintiff's left elbow (*see* Tr. 22-23).  Mr. Myers found left elbow pain

14   with range of motion, but he did not find decreased range of motion in plaintiff's left elbow

15   (Tr. 335).  As such, Mr. Myers's report is not inconsistent with the treatment notes cited by

16   the ALJ, which noted plaintiff's left elbow range of motion was "fair" (Tr. 344 (10/28/09

17   treatment note by Dr. Raul P. Dominguiano, M.D.)) and "all of her extremities have active

18   range of motion" (Tr. 412 (6/15/11 treatment note by Dr. Raul P. Dominguiano, M.D.)).

19   Thus, the ALJ's second reason is not supported by substantial evidence.

20           Finally, the parties dispute whether the ALJ properly rejected Mr. Myers's opinion

21   because plaintiff had not sought ongoing treatment for neck and back impairments.  In

22   essence, the ALJ rejected Mr. Myers's opined limitations because they conflicted with

23   plaintiff's level of medical treatment (*see* Tr. 23).  Even though Mr. Myers appeared to base

24

his opinion on clinical findings and a review of plaintiff's MRI, as plaintiff argues, the ALJ's reason is germane to Mr. Myers. *See Tommasetti, supra*, 533 F.3d at 1041 (inconsistency with the record properly considered by ALJ in rejection of physician's opinions).

Because the ALJ provided one germane reason to reject Mr. Myers's opinion and the improper reasons do not invalidate his ultimate assessment of Mr. Myers's report, the ALJ's errors in this instance were harmless. *See Molina, supra*, 674 F.3d at 1115.

### c.  State agency consultants

On June 1, 2010, state agency medical consultant Robert Hoskins, M.D., affirmed the March 18, 2010 assessment of single decision maker ("SDM") Tony Bingaman, who concluded that plaintiff could perform light work but could only occasionally push and pull with her left upper extremity, climb ramps/stairs, balance, stoop, kneel, and crouch, and could never crawl or climb ladders, ropes, or scaffolds (Tr. 385, 370-77).  Dr. Hoskins also opined that plaintiff had environmental limitations and was limited in her ability to reach and feel (Tr. 373-74).

The ALJ gave "significant weight" to Dr. Hoskins's opinion because it was consistent with the medical examination reports and the hearing testimony from the state agency medical expert (Tr. 23).  The ALJ incorporated into the RFC Dr. Hoskins's opinions that plaintiff can only occasionally reach overhead, feel, push, and pull with her upper left extremity; can never crawl or climb ladders, ropes, or scaffolding; and has environmental limitations (*id.*).  The ALJ rejected Dr. Hoskins's opinions that plaintiff can only occasionally climb ramps/stairs, balance, stoop, kneel, and crouch because he found these limitations to be inconsistent with plaintiff's daily activities (Tr. 23-24).

1    Plaintiff claims the ALJ erred by failing to adopt all of Dr. Hoskins's postural

2  limitations because these limitations are consistent with the other medical opinion evidence.[2]

3  The ALJ "may reject the opinion of a non-examining physician by reference to specific

4  evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998)

5  (*citing Gomez, supra*, 74 F.3d at 972; *Andrews, supra*, 53 F.3d at 1041).  However, all of the

6  determinative findings by the ALJ must be supported by substantial evidence.  *See Bayliss,*

7  *supra*, 427 F.3d at 1214 n.1 (*citing Tidwell, supra*, 161 F.3d at 601); *see also Magallanes,*

8  *supra*, 881 F.2d at 750 ("Substantial evidence" is more than a scintilla, less than a

9  preponderance, and is such "'relevant evidence as a reasonable mind might accept as

10  adequate to support a conclusion.'") (*quoting Davis, supra*, 868 F.2d at 325-26).

11    Here, the ALJ referred to plaintiff's daily activities, which included crocheting,

12  painting, gardening, performing light housekeeping duties, walking pets, taking care of her

13  grandson, and walking for exercise (Tr. 21-22).  The ALJ reasonably found that plaintiff's

14  gardening was inconsistent with Dr. Hoskins's opinion that she could only occasionally

15  balance, stoop, kneel, and crouch.  None of plaintiff's daily activities, however, are

16  inconsistent with Dr. Hoskins's opinion that she could only occasionally climb ramps and

17  stairs.  As such, the ALJ erred by failing to point to specific evidence to reject these opined

18  limitations.  This error was harmful because the RFC was less restrictive than Dr. Hoskins

19  opined.  On remand, the ALJ should reassess Dr. Hoskins's opinion.

---

22    [2] In light of the Court's conclusion, discussed below, that the ALJ should reassess Dr.
23  Hoskins's opinions on remand, the Court need not address the additional arguments plaintiff
raises.  The Court will note, however, that plaintiff's cursory challenge to the ALJ's treatment of
24  the state medical expert's hearing testimony fails to establish reversible error.

1

### d.  Medical evidence that predates the alleged onset date

2

The ALJ did not discuss a number of medical records from 2008, which predate the

3

alleged onset date of January 1, 2009.[3]  Plaintiff contends the ALJ's failure to discuss the

4

2008 medical evidence was erroneous because the ALJ was required to base his decision on

5

all of the evidence in the record.[4]  The Commissioner counters that the ALJ did not err

6

because the 2008 medical evidence was of limited relevance to plaintiff's functioning during

7

her alleged period of disability.

8

Generally, medical opinions that predate the alleged onset of disability are of limited

9

relevance.  *Carmickle, supra*, 533 F.3d at 1165.  However, "[t]he ALJ must consider all

10

medical opinion evidence," *Tommasetti, supra*, 533 F.3d at 1041 (citing 20 C.F.R. §§

11

404.1527(b) and (c)), and may not omit evidence that is significant or probative, *Howard v.*

12

*Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *see also Flores, supra*, 49 F.3d at 571 (an

13

ALJ may not reject "significant probative evidence" without explanation).  Such omissions,

14

nonetheless, may be harmless where they are "inconsequential to the ultimate nondisability

15

determination."  *Carmickle, supra*, 533 F.3d at 1162.

16

17

18

_____

19

[3] The ALJ did discuss the October 24, 2008 note from Yu Zhu, M.D., Ph.D. (*see* Tr. 19), contrary to plaintiff's claims.

20

21

[4] Plaintiff also argues that "although the ALJ briefly discusses Dr. Li's April 2010 nerve conduction testing, which showed that Woeppel had 'mild to moderate left cubital tunnel syndrome,' the ALJ fails to acknowledge that this objective evidence shows that Woeppel has a

22

medical condition that can reasonably be expected to cause the reaching and handling limitations she described in her testimony" (ECF No. 15, p. 10).  The ALJ, however, correctly noted Dr. Li

23

found that the evidence of left cubital tunnel syndrome could be a residual effect of plaintiff's previous left ulnar neuropathy (Tr. 19-20, 383).  Plaintiff thus fails to establish error, much less

24

harmful error, with respect to Dr. Li.

On August 8, 2008, Jose Jeffrey Reasol, M.D., examined plaintiff and completed a DSHS physical evaluation form on which he opined plaintiff's impairments would cause functional limitations for six months (Tr. 289-94). The ALJ did not err in failing to discuss Dr. Reasol's opinion because Dr. Reasol did not identify any impairment that satisfies the durational requirement—i.e., a disabling impairment expected to last for at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A); *Burch, supra*, 400 F.3d at 679 (to be eligible for benefits, claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). As such, Dr. Reasol's opinion was not significant probative evidence.

On October 31, 2008, Pamela Corrall, A.R.N.P., examined plaintiff and completed a DSHS physical evaluation form (Tr. 305-08). She diagnosed left arm numbness and low back pain (Tr. 307). She opined that for more than 12 months, plaintiff would be limited to sedentary work with either marked or severe limitations with lifting, handling, carrying, sitting, standing, and walking (*id.*). She further assessed restrictions in balancing, bending, climbing, crouching, handling, kneeling, pulling, pushing, reaching, stooping, and sitting (*id.*). Although Ms. Corrall's opinion was made at the end of October 2008, she opined plaintiff's assessed limitations would continue for 12 months, which makes her opinion probative to plaintiff's disability after the alleged onset date of January 1, 2009. It thus was error for the ALJ to omit any discussion of it. This error was harmful because Ms. Corrall assessed greater limitations than the ALJ found. *See Carmickle, supra*, 533 F.3d at 1162.

On October 15, 2008, Roger Cox, P.A.C., examined plaintiff and noted neck and low back pain, limited range of motion, and decreased sensation in her left hand (Tr. 322). On

December 9, 2008, Dr. Kain noted chronic neck and back pain, and asserted that plaintiff's back would benefit from exercise (Tr. 320). Both of these reports pre-date plaintiff's left ulnar nerve submuscular transfer and neither of the reports include any functional limitations or analysis (Tr. 320, 322) Therefore, neither of these treatment notes provide significant probative evidence. Plaintiff has failed to establish that they could affect the ultimate nondisability determination. Accordingly, the ALJ did not err by omitting any discussion of this evidence.

In sum, the ALJ did not err by failing to discuss the 2008 medical evidence from Dr. Reasol, Mr. Cox, and Dr. Kain. The ALJ did, however, commit harmful error by failing to discuss the October 2008 opinion of Ms. Corrall. On remand, the ALJ should reconsider and provide a discussion of Ms. Corrall's opinion.

**2. Whether or not the ALJ properly evaluated plaintiff's testimony.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra,* section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

**3. Whether or not the ALJ properly assessed plaintiff's residual functional capacity and erred by basing his step four and alternative step five findings on a residual functional capacity assessment that did not include all of plaintiff's limitations.**

Similarly, the ALJ assigned to this matter following remand will have to reassess plaintiff's RFC based on a proper review of the medical evidence and further evaluation of plaintiff's credibility. If necessary, steps four and five will have to be conducted anew.

**4.  Whether this matter should be reversed for further proceedings or with a direction to award benefits.**

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'"  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen, supra*, 80 F.3d at 1292).  It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved.  *See Smolen, supra*, 80 F.3d at 1292.  Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court.  *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  *Reddick, supra*, 157 F.3d at 722 (*citing Andrews, supra*, 53 F.3d at 1043).  If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v.*

1   *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858

2   n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

3                                   CONCLUSION

4           Based on the stated reasons and the relevant record, the undersigned recommends that

5   this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

6   405(g) to the Commissioner for further consideration.  **JUDGMENT** should be for

7

8   **PLAINTIFF** and the case should be closed.

9           Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

10  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R.

11  Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

12  de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time

13  limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on

14  February 28**,** 2014, as noted in the caption.

15          Dated this 7th day of February, 2014.

16

17  _____

18  J. Richard Creatura
    United States Magistrate Judge

19

20

21

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 20